## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## (EASTERN DIVISION)

| | |
|---|---|
| KIMBERLY STEELE, | Case No.: 1:21-cv-03251 |
| Plaintiff, | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | 1. FCRA, 15 U.S.C. § 1681 *et seq.* |
| HARRIS & HARRIS, LTD.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC, | |
| Defendants. | |

Plaintiff Kimberly Steele ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendants Harris & Harris, Ltd. ("H&H"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants").

## I.     INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by Defendants Trans Union and Equifax (collectively, the "CRA Defendants").  Plaintiff contends that the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting

1

agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges that the CRA Defendants violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which resulted in the CRA Defendants reporting inaccurate information about Plaintiff.

3.      Plaintiff's Complaint also alleges violations of the FCRA against Defendant H&H for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from the CRA Defendants.

## II.    <u>JURISDICTION AND VENUE</u>

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    <u>PARTIES</u>

6.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.      Plaintiff is a natural person who resides in Richton Park, Illinois.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties.  Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, GA 30092.

10.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

11.     The CRA Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce,

and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

12.     Defendant H&H is engaged in the business of collecting debt. H&H is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2.  Upon information and belief, H&H is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. H&H is headquartered at 111 W. Jackson Road, Chicago, Illinois 60604. H&H can be served through its registered agent: MS Registered Agent Services, 191 N. Wacker Drive, Ste. 1800, Chicago, Illinois 60606.

13.     During all times pertinent to this Complaint, H&H and the CRA Defendants were authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

14.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.     FACTUAL BACKGROUND

16.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

17.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the

4

efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

18.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

19.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20.      Equifax and Trans Union, two of the three major consumer reporting agencies (at times referred to collectively as "the CRAs") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (credit reports).  Nonparty Experian Information Solutions, Inc. ("Experian") is the third major consumer reporting agency.

21.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a

deposit account, or for other services) or a "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.　　The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants by furnishers, and other information is independently gathered by the CRA Defendants from third party providers/vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

23.　　The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the credit reports they sell to third parties such as lenders.

24.　　The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

25.　　The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

26.　　The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

27.　　The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon credit reports from CRAs to make lending decisions.

28.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's credit report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRAs' reports.

29.     The information the CRA Defendants include in a credit report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

30.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

31.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

     b.     The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is

higher than it actually is, which will undoubtedly impact his or her credit score.

32.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by CRAs in consumer credit reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.     A consumer's income, however, is not included in his or her credit report; only his or her amount of debt is.

34.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

35.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

36.     Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a credit report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

37.     The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is that all statutorily dischargeable debts, other than those that have been successfully challenged in an adversary proceeding, are discharged.

38.     Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is

8

retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

39.    The CRA Defendants also receive information about discharge exceptions directly from furnishers of account/tradeline information.

40.    In this case, Plaintiff also specifically notified the CRA Defendants that the debt was discharged, but the CRA Defendants rejected this specific notice, despite also possessing independent information, and otherwise having the information reasonably available from the same sources of information the CRA Defendants procured Plaintiff's bankruptcy case information. Instead, the CRA Defendants failed to verify despite notice, and followed unreasonable procedures that ignored the information the CRA Defendants possessed, ignored Plaintiff's notice, and instead blindly relied on the furnisher's own unreasonable "investigation."

41.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.    The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

43.    The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating the information

as required by § 1681(e)(b), despite possessing information inconsistent with the reported information and information that establishes that the reported information is inaccurate.

44. The CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

45. The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

46. The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

47. The CRA Defendants regularly publish consumer information that conflicts with information provided by data furnishers, already included in the CRAs' credit files, contained in public records that the CRA Defendants regularly access, and/or sourced through the CRAs' independent and voluntary efforts.

48. The CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to inaccurate account and payment statuses and failing to verify the status of accounts even after notice from the consumer, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against them for their inaccurate reporting following a consumer bankruptcy.

*Allegations Specific to the Credit Reporting of Plaintiff*

49. Plaintiff filed a Chapter 13 Bankruptcy on or about April 1, 2016 in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 16-11378).

10

50.     Accordingly, Plaintiff received an Order of Discharge on or about July 17, 2020.

51.     Thereafter, Plaintiff was not personally liable for the dischargeable debts. At the date of discharge, all of Plaintiff's dischargeable debts carried a zero-dollar balance.

52.     Upon information and belief, the CRA Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 13 Bankruptcy.

53.     The CRA Defendants reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

54.     The CRA Defendants reported Plaintiff's bankruptcy filing and bankruptcy discharge information in both the Public Records section and the individual tradelines of Plaintiff's consumer reports.

55.     The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRA Defendants in Plaintiff's consumer reports.

56.     The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 13 bankruptcy with a status of "discharged

through bankruptcy" and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

57.     The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 13 Bankruptcy and/or with a zero-dollar balance, but did not.

58.     Rather than accurately report the discharged debts, the CRA Defendants inaccurately reported Plaintiff's H&H Account (the "H&H Account"), starting with 4204****** and opened prior to Plaintiff's bankruptcy filing.

59.     The H&H Account was included in Plaintiff's bankruptcy petition schedules and discharged on or about July 17, 2020.  Therefore, the H&H Account should have been reported as discharged in bankruptcy and/or with a zero-dollar balance.

60.     However, the CRA Defendants inaccurately reported the discharged H&H Account with a $190 balance, instead of a zero-dollar balance.

61.     The CRA Defendants did not indicate that the H&H Account was discharged in bankruptcy or report the H&H Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report, and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 13," and/or with zero-dollar balances.

<em>Plaintiff's Disputes</em>

62.     On or about October 22, 2020, Plaintiff sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the H&H Account.

63.     The dispute letters specifically provided Plaintiff's bankruptcy case number; identified the H&H Account; and advised that: a) the account was included in Plaintiff's bankruptcy; and b) she no longer owed any money on the H&H Account.

64.     Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

65.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to H&H within five business days of receipt.

66.     Upon information and belief, H&H received Plaintiff's dispute.

67.     Following Plaintiff's dispute, Experian deleted the H&H Account from Plaintiff's consumer report.

68.     Following Plaintiff's dispute, Trans Union reported the H&H Account as having a $190 balance and being in "collection" status, rather than discharged in bankruptcy with a zero balance.

69.     Following Plaintiff's dispute, Equifax reported the H&H Account as "in bankruptcy" with a $190 balance, rather than discharged in bankruptcy with a zero balance.  Equifax also inaccurately reported a January 2020 "Date of 1st Delinquency" (i.e., it reported that a payment of an unsecured debt became delinquent while the automatic stay was in effect for Plaintiff's bankruptcy).

70.     Upon information and belief, Equifax and Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to H&H, despite possessing independent information indicating the H&H Account was discharged and/or the ability to independently verify the H&H

13

Account discharge through the same sources they receive consumer bankruptcy information.

71.     Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and known information indicating that Plaintiff had obtained a discharge, Equifax and TransUnion merely parroted information furnished by H&H, despite awareness that the information was factually inaccurate and conflicted with known information.

72.     Upon information and belief, H&H failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax and Trans Union.   H&H failed to, among other things, review all relevant information regarding the dispute or ignored this information.

73.     Consequently, H&H continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which H&H should have reported accurate information about the H&H Account.

74.     The CRA Defendants inaccurately reported that Plaintiff owed a balance on the H&H Account that Plaintiff did not actually owe, and also reported inaccurate account statuses and/or payment histories regarding the H&H Account.

75.     The CRA Defendants inaccurately reported the H&H Account with a balance owed after the H&H Account was discharged in Chapter 13 Bankruptcy, and therefore had a zero-dollar balance.

14

76. The CRA Defendants failed to indicate that the H&H Account had a zero-dollar balance and/or was included/discharged in Chapter 13 Bankruptcy.

77. The CRA Defendants' reporting of the H&H Account is patently false and therefore inaccurate.

78. If not patently false, the CRA Defendants' reporting of the H&H Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

79. Upon information and belief, had Defendants accurately reported the H&H Account with a zero balance, Plaintiff's credit scores would have been better.

80. After Plaintiff's bankruptcy discharge, Plaintiff applied for credit and, upon information and belief, was denied credit and/or provided credit on terms that would have been better had Defendants properly reported the H&H Account.

81. As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

82. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

///

///

## V.     COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)
### (The CRA Defendants)

83.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

84.     The FCRA requires CRAs, like the CRA Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

85.     The CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after Plaintiff received a Discharge Order.

86.     The CRA Defendants voluntarily obtained information about Plaintiff's bankruptcy filing and discharge to include in Plaintiff's consumer reports.

87.     When the CRA Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

88.     Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their known duties and deprived Plaintiff of her rights under the FCRA.

89.     The CRA Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

90.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants, from which the CRA Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

91.     Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

92.     However, the CRA Defendants inaccurately reported the H&H Account that predated Plaintiff's Chapter 13 Bankruptcy and was included in and discharged by Plaintiff's bankruptcy.

93.     The CRA Defendants knew or should have known that the effect of a Discharge Order in a no asset Chapter 13 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed or successfully challenged in an adversary proceeding.

94.     The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in her credit reports, including her bankruptcy case number, court, date of filing and date of discharge.

95.     The CRA Defendants are also on notice from other tradelines reported by the CRA Defendants that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

96.     The CRA Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

97.     The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero balance.

98.     The CRA Defendants had prior notice of their unreasonable procedures for reporting discharged debts.

99.     The CRA Defendants also possessed information from which they should have known the information reported about Plaintiff was inaccurate, as Plaintiff's credit reports include: the date the consumer filed bankruptcy and whether the consumer obtained a bankruptcy discharge.

100.    Yet in this case, the CRA Defendants reported the H&H Account, which predated Plaintiff's bankruptcy, with a balance owed after discharge, instead of a zero-dollar balance.

101.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer /report.

102.    The CRA Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when they knew or should have known the information they were reporting was inaccurate, and/or otherwise contradicted by information known by the CRA Defendants, reported to the CRA Defendants, and/or reasonably available to the CRA Defendants.

103.    The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

104.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

105.    Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the H&H Account with an outstanding balance, despite notice that the H&H Account was discharged, and the ability to independently confirm that the H&H Account was discharged.

106.    The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed the information confirming that the H&H Account was discharged, including specific notice from Plaintiff.

107.    The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the H&H Account was discharged following Plaintiff's dispute. The information necessary to do so can be retrieved from the same sources the CRA Defendants procure consumer bankruptcy information.

108.    When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

109. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

110. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

111. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed H&H Account after Plaintiff notified the CRA Defendants of the inaccurate information reported in Plaintiff's credit file.

112. Equifax and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to, the following:

(a)    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)    Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)    Failing to include all relevant information when notifying H&H of Plaintiff's dispute.

20

113. Instead of reasonably reinvestigating Plaintiff's dispute, Equifax and Trans Union continued to report the discharged H&H Account with an outstanding balance after Plaintiff's bankruptcy discharge.

114. The CRA Defendants' conduct, as described above, was done willfully and knowingly; or, alternatively, the CRA Defendants' conduct was negligent.

115. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

116. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy and/or failing to report that the debt was discharged in bankruptcy.

117. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

118. The CRA Defendants are the direct and proximate causes of Plaintiff's damages.

119. The CRA Defendants are a substantial factor in Plaintiff's damages.

120. Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

///

21

## VI.    COUNT II
### Defendant H&H
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

121.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

122.    The FCRA requires furnishers of information like H&H to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, the furnisher must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

123.    H&H knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. H&H possesses or can easily obtain substantial written materials that detail its duties as a furnisher under the FCRA.

124.    Despite knowing these legal obligations, H&H acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

125.    Plaintiff disputed the H&H tradeline through all three national CRAs: Defendants Experian, Equifax, and TransUnion.

126.    Thereafter, the consumer reporting agencies forwarded Plaintiff's dispute to H&H, notifying H&H that Plaintiff was disputing the information it had furnished about the H&H Account.

127. H&H received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures, despite possessing all relevant knowledge regarding the dispute.

128. H&H continues to furnish inaccurate information about Plaintiff to all three CRAs, even though H&H possessed all relevant information about the H&H Account and the inaccuracy that Plaintiff disputed.

129. The inaccurate H&H Account materially and adversely affects Plaintiff's credit standing.

130. On at least one occasion within the past two years, by example only and without limitations, H&H violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

131. H&H violated 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

132.    H&H unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

133.    H&H is a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiff.

134.    Consequently, H&H is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)   Declaratory judgment that Defendants violated the FCRA;

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

///

///

///

## <u>VERIFICATION OF PLAINTIFF</u>

I, Kimberly Steele, declare as follows:

1.  I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Illinois.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint and, if called on to testify, I would competently testify as to the matters stated herein.

3.  Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury under the laws of the United States of America that the factual allegations/statements in this Complaint concerning myself, my activities, and my intentions are true and correct, to the best of my knowledge and recollection.

Executed on  5/11/2021

Kimberly Steele

///

///

///

26

Respectfully submitted this 17th day of June 2021.

By: */s/ Michael J. Plati*
Michael J. Plati
Bar Number: Arizona 016705
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5561
F: (818) 600-5461
E: plati@pricelawgroup.com

Syed H. Hussain
Bar Number: Illinois 6331378
**PRICE LAW GROUP, APC**
420 E. Waterside Dr., #3004
Chicago, IL 60601
T: (818) 600-5535
F: (818) 600-5435
E: syed@pricelawgroup.com
*Attorneys for Plaintiff,*
*Kimberly Steele*